IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3009-FL

| | |
|---|---|
| MARLIN DOUGLAS SCOTT and )<br>JOHNNY W. ALLDRED, III, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ALVIN W. KELLER, ROBERT C. )<br>LEWIS, BETTY BROWN, JOSEPH B. )<br>HALL, TERRI STRATTON, JACKIE )<br>PARKER, SECRETARY REUBEN )<br>YOUNG, CATHY MOORE, and )<br>SANDRA LASDEN, )<br>)<br>Defendants. )<br>) | ORDER |

The matter is before the court on the motion for judgment on the pleadings (DE 68) pursuant to Federal Rule of Civil Procedure 12(c) filed by defendants Betty Brown ("Brown"), Joseph B. Hall ("Hall"), Alvin W. Keller ("Keller"), Robert C. Lewis ("Lewis"), Terri Stratton ("Stratton"), and Reuben Young ("Young"). The matter was fully briefed. Also before the court is the motion for judgment on the pleadings (DE 74) filed by defendants Sandra Lasden ("Lasden"), Cathy Moore ("Moore"), and Jackie Parker ("Parker"), which was fully briefed. In this posture, the issues raised are ripe for adjudication. For the foregoing reasons, the court denies both pending motions.

## STATEMENT OF THE CASE

On January 24, 2011, plaintiffs filed this action, *pro se,* pursuant to 42 U.S.C. § 1983. The court subsequently allowed plaintiffs to proceed, and issued an order of investigation directing North Carolina Prisoner Legal Services ("NCPLS") to conduct an investigation into whether the appointment of counsel was warranted. On September 29, 2011, NCPLS responded to the court's order of investigation, and stated that it would represent plaintiffs in this case.[1]

On August 17, 2012, with leave of court, plaintiffs submitted an amended complaint alleging defendants violated their rights as members of the Messianic Jewish faith, pursuant to the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In particular, plaintiffs alleged that defendants, or individuals under defendants' control, denied them access to kosher meals, the opportunity to participate in the corporate observation of holy days, and the opportunity to participate in corporate worship services on the Sabbath. As relief, plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages. Plaintiffs also sought reasonable attorney's fees and costs as permitted under 42 U.S.C. § 1988.

On September 25, 2012, Brown, Hall, Keller, Lewis, Stratton, and Young filed a motion for judgment on the pleadings, which was fully briefed. Lasden, Moore, and Parker subsequently filed a motion for judgment on the pleadings, which also was fully briefed.

---

[1] A third individual, James Pearson, was named as plaintiff in the original complaint, but voluntarily dismissed his claim on November 4, 2011.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiffs are as follows. Plaintiffs, both state inmates, are practicing Messianic Jews. Am. Compl. ¶ 18. On April 4, 2010, plaintiff Marvin Douglas Scott ("Scott"), who currently is housed at Nash Correctional Institution ("Nash"),[2] received a letter from a Messianic Jewish rabbi stating that the North Carolina Department of Public Safety ("DPS") no longer recognized Messianic Judaism as a religion, and that it had banned all inmates from participating in Messianic worship services. Id. ¶ 21. Scott shortly thereafter spoke with Stratton, a chaplain, who confirmed that DPS no longer recognized Messianic Judaism as a religion, and that it had banned all inmates from participating in all Messianic Jewish worship services. Id. ¶ 22.

On May 12, 2010, Stratton informed Scott that DPS had changed its policy and now recognized Messianic Judaism. See id. ¶ 23. Stratton informed Scott, however, that Messianic Jewish inmates still were not allowed to worship inside the prison chapel. See id. On May 18, 2010, Scott requested permission from Stratton to hold a Messianic Jewish worship service on May 21, 2010, in observance of the Sabbath. Id. ¶ 24. Stratton responded that Scott needed to make such a request to the prison administrator. Id. Scott then sent a letter to Hall, Harnett's Superintendent, requesting permission to hold a Messianic Jewish service on the Sabbath. Id. ¶ 25. Scott did not receive a response. Id. ¶ 26.

On May 31, 2010, Scott filed a grievance (number 3805-10-245) at Harnett complaining about the restrictions DPS imposed on the practice of his religion. Id. ¶¶ 27-28. DPS staff then

---

[2] Scott's amended complaint indicates that he formerly was incarcerated at Harnett Correctional Institution. See Am. Compl. ¶ 27.

provided Scott the following response: "You are correct; the department [sic] of correction [sic] have acquiesced messianic [sic] Judaism as one of the faith groups recognized by the department. However, at this time, details are still being processed. Once the details are established, the inmate population will be notified when services will commence. No further action is deemed necessary at this time."[3]  Id. ¶ 29.

On August 30, 2010, Scott submitted a second grievance (number 3805-10-416) at Harnett again complaining that his right to practice his religion was being impinged. Id. ¶ 32. In response, DPS staff informed Scott that there was a one hour "time slot on Fridays for the Jewish community to gather together to observe the Sabbath." Id. ¶ 33. DPS staff further informed Scott that "Passover is the only Holy Day where specific stipulations are set in place," that "Messianic Jews may attend Christian worship," and that Messianic Jews "may select the Lacto-Ovo-Vegetarian Diet or Alternative Diet."[4]  Id.

On September 6, 2010, plaintiff Johnny W. Alldred, III ("Alldred"), filed a grievance (number 3805-10-434) at Harnett and informed prison staff that, as a Messianic Jew, his faith requires him to worship corporately on Saturdays and to eat only kosher food. Id. ¶ 40. In response, DPS staff informed plaintiff that: "The new policy states that Messianic Jews may attend Christian worship . . . Additional services may be provided if a volunteer is available. In addition the

---

[3] Plaintiff completed his administrative remedy process for this grievance. Am. Compl. ¶ 31.

[4] Plaintiff completed the remaining steps of DPS administrative remedy procedure for this grievance. Id. ¶¶ 37-38.

authorized diet for inmates of the Jewish faith in the [DPS] is Lacto-Ovo-Vegetarian Diet or Alternative Diet."[5] Id. ¶ 41.

On September 23, 2011, Scott filed a third grievance regarding the failure of Moore and Lasden to serve him a kosher diet with sufficient calories to match his appropriate caloric intake. Id. ¶ 39. Scott also states that Moore and Lasden failed to ensure that the preparation of kosher meal trays is done in such a way that the meals remain kosher. Id.

Plaintiffs state that, in order to practice their religion, they must be provided with kosher meals, be allowed to participate in corporate observation of holy days, and be allowed to participate in corporate worship on the Sabbath. Id. ¶ 19.

## DISCUSSION

A.  Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed–but early enough not to delay trial. . . ." Fed.R.Civ.P 12(c). In reviewing a motion for judgment on the pleadings, the court applies "the same standard" as for motions made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Thus, when a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint. Pledger v. North Carolina Dep't of Health and Human Services, 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998). A federal district court considering a motion to dismiss for failure to state a claim must view the allegations

---

[5] Alldred exhausted this grievance through DPS administrative remedy procedures. Id. ¶¶ 44, 45.

of the claim in the light most favorable to the non-moving party. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

B.   Analysis

   1.   RLUIPA

RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one

of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted). The court may "not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n. 8).

Here, plaintiffs allege that DPS's religious policy, as it applies to the religion of Messianic Judaism, substantially burdens their exercise of that religion on the following three grounds: (1) plaintiffs' ability to attend corporate worship on the Sabbath; (2) plaintiffs' ability to follow a kosher diet as required by their religious faith; and (3) plaintiffs' ability to participate in corporate worship of holy days. Defendants argue that plaintiffs' pleadings are insufficient because they fail to plead the religious authority which informs their religious beliefs. RLUIPA, however, does not require a heightened pleading standard, and plaintiffs have adequately alleged that the challenged policy substantially burdens their exercise of their Messianic Jewish religion. As a result, the court finds that plaintiffs have adequately stated a RLUIPA claim. The court, however, will consider the evidence on a more complete record and determine whether plaintiffs are able to make a prima facie case that DPS's Messianic Judaism policy imposes a substantial burden on their ability to practice their faith, and, if necessary, whether the burden is the least restrictive means of furthering a compelling governmental interest.

7

Case 5:11-ct-03009-FL   Document 85   Filed 07/11/13   Page 7 of 12

2. First Amendment Claim

In addition to their RLUIPA claim, plaintiffs also allege a claim pursuant to the First Amendment. Plaintiffs allege that DPS's policies governing their Messianic Jewish faith violate the First Amendment of the United States Constitution. The First Amendment states that "Congress shall make no law respecting an establishment of religion," U.S. Const. Amend. I, and the United States Supreme Court has applied this principle against the states through the Fourteenth Amendment, see Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The substantial burden test used in First Amendment inquiries was incorporated by RLUIPA. Lovelace, 472 F.3d at 199 (citation omitted).

Here, the court has determined that plaintiffs adequately alleged that DPS policy substantially burdened the exercise of their religion under RLUIPA. Thus, the court likewise finds that plaintiffs adequately plead a substantial burden for the purposes of the First Amendment, and defendants' motion to dismiss this claim is DENIED.

3. Mootness of Plaintiffs' Official Capacity Claims

Defendants argue that plaintiffs' official capacity claims are moot because DPS now recognizes Messianic Judaism and has enacted policies to accommodate its religious practices. Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence."

United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70-71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

A case, however, is not necessarily mooted by a defendant's voluntary cessation of allegedly offensive conduct. United States v. Jones, 136 F.3d 342, 348 (4th Cir. 1998) ("voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit."). Rather, the standard for determining whether a case has been mooted by a defendant's voluntary conduct is stringent: "A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 169 (2000) (quotation and citation omitted). The party requesting a dismissal for mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." Id. at 170 (quotation and citation omitted).

The court begins with plaintiffs' kosher diet claim. Defendants submitted evidence that effective August 28, 2012, DPS amended their Food and Nutrition Management Policy to accommodate inmates requiring kosher meals. North Carolina Prisons Food and Nutrition Management Policies and Procedures, § 800. In particular, under the new policy, DPS now maintains kosher kitchens at a limited number of facilities. Id. § 800.8. The policy further states that kosher kitchens will be equipped with necessary facilities to store, segregate, prepare, and serve kosher food in accordance with Jewish dietary law. Id. §§ 800.11, 800.12, 800.13, and 800.14. The

9

policy states that an inmate whose designated religion mandates a kosher diet may request that he be placed on the kosher meal plan. Id. §§ 800.7 and 800.8. The inmate then will be transferred to a facility with a kosher kitchen and be provided kosher meals. Id. § 800.9.

In response, Scott asserts that he still is not receiving a kosher diet, despite the enactment of the new food policy in 2012. Plaintiffs also assert that the kosher meals provided contain insufficient caloric value for lunch and dinner, and that the meals must be supplemented by a non-kosher breakfast as well as other non-kosher foods. Based upon the foregoing, the court DENIES defendants' motion with respect to this official capacity claim.

As for plaintiff's remaining official capacity claims, defendants argue that these claims are mooted by the fact that, in 2010, DPS changed its policy to recognize Messianic Judaism and enacted policies to accommodate its religious practices. Plaintiffs, in response, state that their amended complaint alleges that, despite the 2010 policy change, they still are denied the opportunity to participate in corporate worship and that they still are denied the opportunity to participate in corporate observation of holy days. Based upon these allegations, the court finds that plaintiffs have adequately stated a claim as to their two remaining official capacity claims.

   4.  Supervisor Liability

Plaintiffs' claims against DPS Secretary Keller, DPS Chief of Prisons Lewis, Director of Chaplaincy Services Brown, Correctional Administrator Hall, Chaplain Stratton, DPS Chief of food and nutrition management Parker, Nash kitchen supervisor Moore, and Nash kitchen supervisor Lasden are against them in their capacities as DPS supervisory officials. A supervisor may be liable for the actions of a subordinate if:

> (1)  the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive

10

>    and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

### a. Keller, Lewis, Brown, Hall, and Stratton

Plaintiffs allege that Keller, Lewis, and Brown have personally promulgated policies that violate their constitutional rights. This is sufficient to state a claim against these defendants. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982) (finding that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal conduct or on another's conduct in execution of the defendant's policies or customs), abrogated on other grounds by, Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991).

As for Stratton and Hall, plaintiffs allege that they informed Stratton and Hall of their religious practices on several occasions, but that Stratton and Hall failed to provide assistance. The court finds that plaintiffs' allegations state a constitutional claim against these defendants.

### b. Parker, Moore, and Lasden

Plaintiffs allege that Moore and Lasden, in their capacity as Nash kitchen supervisors, have failed to serve them with a completely kosher diet with sufficient calories, and have failed to ensure that the preparation of kosher meal trays is done in such a way that the meals remain kosher. Plaintiffs further state that it is Parker's job to ensure that plaintiffs receive a kosher diet. Based

11

upon these facts, the court finds that plaintiffs have sufficiently alleged a RLUIPA and First Amendment claim against Parker, Moore, and Lasden.

## CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings (DE 74) filed by defendants Lasden, Moore, and Parker is DENIED. The motion for judgment on the pleadings (DE 68) filed by defendants Brown, Hall, Keller, Lewis, Stratton, and Young is DENIED. The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this 11th day of July, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge